UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOSHUA WILLIAMSON, | Case No.: 09-CV-736-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MUNSEN PAVING, LLC, an Oregon limited liability company, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

In his Third Amended Complaint, plaintiff Joshua Williamson seeks punitive damages based on defendant Munsen Paving's "reckless and outrageous indifference to a highly unreasonable risk of harm" and its "conscious indifference to the health, safety, and welfare of others" by engaging in the following acts:

> a. In hiring and retaining an emotionally unstable driver;
>
> b. In disregarding the health and safety regulations of the DOT and OR-OSHA;
>
> c. In deliberately avoiding health and safety inspections and evaluations; and
>
> d. In providing false information to the AGC, SAIF, and its insurance agent JBL&K regarding it safety regulations, practices and procedures.

(Third Amended Complaint at 6-7.) Munsen seeks summary judgment on this claim based on the absence of evidence establishing the alleged wrongful conduct, the lack of causal relationship between the conduct and the accident, and the failure to establish malicious or wanton conduct. Munsen also seeks summary judgment on Williamson's negligence claim based on regulations enacted by the Occupational Safety and Health Administration ("OSHA") asserting that Williamson was not a member of the group intended to be protected by the statutory scheme. Williamson has failed to adequately support his claim for punitive damages and this court has already held that Williamson was not a member of the class of persons meant to be protected by the majority of the regulations relied on by Williamson in his negligence claim. Accordingly, Munsen's motion to dismiss is granted both on Williamson's claim for punitive damages and his negligence claim based on violations of O.A.R. 437-001-0760(1)(a)-(c), 29 C.F.R. § 1926.20(a)(1), and 29 C.F.R. § 1926.21(b)(2).

## Background

The relevant facts are not genuinely disputed. The parties agree that on June 11, 2008, Christopher Murchie, a Munsen employee, cut in line in front of Williamson's truck and, while attempting to back under the asphalt loader according to Munsen's standard practice, ran over Williamson who was standing to the side of his truck giving his driver directions. Additionally,

Munsen admits that it was negligent in two particulars: 1) in failing to have proper procedures for drivers awaiting the collection of asphalt or gravel; and 2) in failing to establish an adequate or any traffic plan for drivers' acquisition of asphalt within the loading area. Munsen denies all other allegations of negligence or violations of the Oregon Safe Employment Act (OSEA).

There are no allegations, or evidence, that Murchie was intoxicated or in any way wantonly or intentionally caused the accident. It is undisputed that Murchie was a commercially trained and licensed driver with a clean driving record. It is also undisputed that Munsen has operated an asphalt plant for over twenty years and this is the first driving-related accident at the plant. The only other accident of any kind at the plant occurred in November 2007 and involved an oil spill and fire.

Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (2008). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (2008) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

## Discussion

### I. Punitive Damages

Williamson bases his claim for punitive damages on OR. REV. STAT. 31.730(1) which provides that:

> Punitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others.

"Although it is clear under Oregon law that simple negligence, without more, cannot support an award of punitive damages, where the evidentiary record supports findings of both negligence and the additional factors of aggravated misconduct requisite for award of punitive damages, a punitive damages award may lie in connection with a negligence claim." *Jane Doe 130 v, Archdiocese of Portland in Oregon*, No. CV 08-1930-PK, 2010 WL 1838844, at *16 (D. Or. May 4, 2010). The "malice" prong entails a showing of an "intentional doing of a wrongful act, without cause or excuse and with intentional disregard of the social consequences." *Blades v. White Motor Credit Corp.*, 90 Or. App. 125, 130 (1988).

Oregon courts do not draw much of a distinction between malice and recklessness. The Oregon Supreme Court described malice as "[a] tort committed with a bad motive or so recklessly as to be in disregard of social obligations, or an act wantonly, maliciously or wickedly done, is such a malicious act as authorizes the awarding of punitive damages." *Linkhart v. Savely*, 190 Or. 484, 506 (1951). More recently, the same court clarified that "malice" means "nothing more than a wrongful act done intentionally without, just cause or excuse." *Friendship Auto Sales, Inc. v. Bank of Willamette Valley*, 300 Or. 522, 535 (1986). Consequently, the line between malice and recklessness in Oregon is somewhat blurred, but the line is clear enough to allow that to be entitled to punitive damages on a negligence claim, a plaintiff must establish that the defendant engaged wanton misconduct, which is conduct more severe than mere negligence. *Coursen v. A. H. Robbings Co., Inc.*, 764 F.2d 1329, 1336 (9th Cir. 1985)(Under Oregon law, "'[w]anton disregard' obviously means more than mere negligence.")

> For purposes of determining punitive damages, wanton misconduct is that which creates a substantial risk of harm to another and is purposely performed with an awareness of the risk and a disregard of the consequences. That definition is in

> keeping with the Oregon Supreme Court's statement that "punitive damages . . . are a penalty for conduct that is culpable by reason of motive, intent, or extraordinary disregard of or indifference to known or highly probably risks to others."

*Axen v. American Home Products Corp.*, 158 Or. App. 292, 312 (1999)(*citing Andor v. United Air Lines, Inc.*, 303 Or. 505, 517 (1987)).

A plaintiff seeking an award of punitive damages must offer proof of malice or "reckless and outrageous indifference" by clear and convincing evidence. OR. REV. STAT. 31.730(1). "Evidence qualifies as 'clear and convincing' when the truth of the facts asserted is highly probable." *Thompson v. Federico*, 324 F. Supp. 2d 1152, 1170 (2004). In determining the appropriateness of punitive damages, the factfinder is limited to evidence which directly relates to the conduct at issue or which establishes a plan, scheme, or method of operation or intent. *Beecher v. Montgomery Ward & Co., Inc.*, 297 Or. 496, 501 (1973).

> It is the tortious act and the motives with which it is committed that give rise to punitive damages. The focus of the jury's inquiry, therefore, should not be the character of the wrongdoer himself but the character and quality of his tortious conduct. It follows that matters occurring after the tortious act are not material to the issue of punitive damages, unless they constitute evidence of the manner in which the complained of event occurred.

*Mason v. Householder*, 58 Or. App. 192, 195 (1982). "A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003). A factual dispute over the defendant's motive precludes summary judgment on the issue of punitive damages. *R&C Ranch LLC v. Kunde*, 180 Or. App. 314, 318-19 (2002).

    A. Hiring and retaining an emotionally unstable driver.

Williamson asserts that Munsen engaged in wanton misconduct when it hired and retained

Murchie, whom he describes as an emotionally unstable driver. Williamson has offered no medical evidence establishing that Murchie is emotionally unstable. Instead, Williamson relies on evidence that: 1) Murchie was charged with Assault IV just prior to his divorce, a charge that was later dropped by his wife; 2) Murchie lost two jobs, garbage hauler and shipping foreman, due to disputes/disagreements with a coworker and supervisor, respectively; 3) Murchie is unable to remember what type of discharge he received from the service and did not save any paperwork relating to the discharge (Williamson asserts that because Murchie thought it might be a "Category 8" that he must have been referring to a "Section 8" which is discharge for being mentally unfit for service); 4) Murchie was terminated by Munsen one month after the incident because he was unable to get along with the paving crew and had bad work habits (Murchie testified that he was told he was laid off due to lack of work); and 5) Munsen lost Murchie's employment file which Williamson asserts is evidence that the contents of the file would be supportive of his claim that Munsen did not do a background investigation and that Murchie was unstable (Williamson plans to request a spoliation instruction).

First, the evidence offered does not support a conclusion that Murchie was emotionally unstable. Second, even if Murchie was emotionally unstable, there is no evidence that the instability resulted in the accident – Murchie had a clean driving record and there is no evidence that after the accident Murchie displayed behavior that suggests emotional instability. Third, while there is evidence that Munsen did not do a complete DOT background check on Murchie at the time he was hired,[1] there is no evidence that even if Munsen had completed a full DOT check, it would have

---

[1] In its answers to requests for admissions, Munsen admits that it did not obtain records or do a background check in compliance with Department of Transportation regulations (DOT) before hiring Murchie. However, Munsen did obtain an abstract of Murchie's DMV record showing that

discovered evidence establishing that Murchie was emotionally unstable. Finally, there is no evidence that Munsen acted with malice or reckless indifference in hiring and retaining Murchie.

B. Disregarding the health and safety regulations of DOT and OSHA.

Williamson relies on the conclusion of his expert, Troy Corbin, that "the lack of formal health and safety programs and policies and the lack of Mr. Murchie insuring that it was safe to back up contributed to and caused this accident," in support of his argument that Munsen's failure to comply with DOT and OSHA health and safety regulations is evidence of Munsen's reckless disregard and conscious indifference to the safety of its customers. Specifically, Williamson argues that if Munsen "had safety committee meetings that met at the required frequency and maintained the requisite records, addressing the types of issues required to be discussed in safety committees, Defendant would have been aware of the hazards associated with its operations, including the absences of the traffic control plan and noise levels testing."

Initially, Williamson's evidence demonstrates that Munsen was unaware of the hazards associated with its operation. That, in and of itself, lends support to a finding that Munsen was not engaging in wanton misconduct, which requires the creation of a substantial risk of harm to another and is *purposely performed* with an *awareness* of the risk and a disregard of the consequences.

Evidence of the Munsen's regulatory violations is found in Williamson's Exhibits E and F. Five months after the accident, DOT audited Munsen's compliance and found it to be in violation of a number of regulations relating primarily to documents and record keeping. (Ex. E.) The violations included failing to provide written educational material or employer's policies; failing to

---

he was a qualified driver with a CDL, just not the more lengthy record or full background check required by DOT.

properly maintain employment files, failing to require drivers to maintain written duty reports or vehicle inspection reports, failing to file reports with regulatory agencies as required, failing to provide training for drug and alcohol testing, misrepresenting that alcohol and drug testing were required after a specific accident, and failing to adequately test vehicles. The audit determined that Munsen's safety management controls were woefully inadequate, noting specifically the driver qualification files, but reported that all drivers had valid commercial driver's licenses. The most disconcerting part of the review was the condition of the vehicles, with numerous violations in the area of brake adjustments. None of the vehicles had received an annual FHWA inspection, drivers were not required to complete driver-inspection reports, and maintenance files were inadequate. Munsen's maintenance program was described as a "complete mess."[2]

It should be noted that this audit occurred five months after the accident which implies that Munsen was not aware of the deficiencies at the time of the accident and is relevant to Munsen's state of mind. The last time Munsen was audited was in November 1994, well before the accident occurred and, arguably, at that time no major violations were discovered or, if they were, they had been resolved.

Also, the audit reveals primarily that documents were not created or properly maintained, not that the activities recorded by those documents had not occurred. Therefore, the fact that Munsen did not require employees to maintain records of vehicle inspections is not evidence that those inspections did not occur. In fact, Murchie testified that he was required to, and did, complete daily pre- and post-trip inspections of his truck and that he specifically checked the backup alarm on his

---

[2]Within two months, Munsen's safety fitness rating was upgraded from "Unsatisfactory" to "Conditional" and then to "Satisfactory" as of May 4, 2010.

truck, which was working. Similarly, that fact that employee files were not properly maintained resulting in the absence of a document, such as an annual review of a driving record, is not evidence that the annual review did not occur.

Williamson also offers evidence that Munsen was cited and fined for OSHA violations on two occasions. Once on July 13, 2007, for violations related to a power cord that was missing a bushing and a main plant compressor automatic starter not having a back on the guard. Clearly, these violations did not, in any way, relate or contribute to Williamson's accident. The second on September 21, 2009, for failure to maintain a written hazard communication program or MSD sheets for hazardous chemicals; failure to evaluate for, or warn employee's about, permit-required confined spaces, including the asphalt hopper; failure to hold a safety committee meeting on August 12, 2009; failure to log a work-related illness related to hearing loss or compare the annual audiogram to the base test; and failure to medically evaluate employees for the use of respirators or properly store the respirator. This citation was after the accident and, with the exception of the missed safety meeting on August 12, 2009, the violations noted therein are not relevant to the accident in either time or subject. The fact that Munsen was cited for not having a safety meeting on August 12, 2009, could be viewed as evidence that those meetings occurred as required otherwise.

The only other evidence offered with regard to the safety meetings is testimony that Munsen held regular safety meetings at the asphalt plant but that the meetings were not logged or recorded in any way and may not have been held in accordance with OSHA regulations. Williamson relies on Munsen's failure to provide written documents to Margaret LaVaque, a safety and loss-control consultant for Munsen's workers' compensation carrier, as evidence that Munsen did not have safety meetings or a safety plan in place. Again, the absence of documents indicating that the meetings

occurred or a safety plan existed is not evidence that the meetings did not occur or that the safety plan did not exist. Even LaVaque testified on more than one occasion that she couldn't say that the safety manuals or safety meetings didn't occur or exist, only that she didn't have a copy of them. Furthermore, there is evidence that LaVaque did receive some copies of "written programs in place at Munsen" but that the information was incomplete.

Similarly, Munsen had a traffic-control plan based on custom and practice, but it was not memorialized on paper. Munsen described it as a "first come-first served" plan but acknowledged that there were times when Munsen trucks were allowed to cut in line. Munsen explained its traffic control plan to its drivers and indicated that it wanted the drivers to back up under the hopper to avoid getting asphalt oil on the cab or windshield of the truck. Even Williamson's employer was aware of the traffic control plan based on customary practices at Munsen and told Williamson that he should make an effort to get the truck under the asphalt loader as quickly as possible after the previous truck leaves and that he should watch for everybody because sometimes people would park off to the side of the hopper as well. Munsen admits that it did not use traffic signs to designate the proper route and that it did not seek professional advise on the propriety of its plan.

The Munsen brothers educated themselves about relevant safety and health regulations by reading DOT, OSHA, and federal mining rules as well as manuals. They did not attend any seminars or other formal training, did not join a trade group, and did not subscribe to trade publications. They believed that they were in compliance with all state and federal regulations and, based on the absences of any citations or fines, or any traffic incidents, prior to the accident, were apparently justified in doing so. At least one individual in the safety industry represented that Munsen's problems were all paperwork related and that it was operating safely. LaVaque described the

Munsen brothers as very "knowledgeable" and indicated they didn't need the optional safety consulting services. "The company may not have had all the formal policies, but my observations supported good faith in working and providing a safe and healthful work environment. (LaVaque Dep. 33:15-18.)

This evidence does not establish a triable question of fact on Munsen's deliberate disregard of its customer's safety or a "willful, wanton and intentional effort to stay below the radar." Munsen attempted to comply, albeit unsuccessfully on a number of points, and, in good faith, thought that it was complying with applicable rules and regulations. There is no evidence that Munsen had any notice of noncompliance prior to the accident. In short, the requisite mental state does not exist here. "Misjudgment and negligence do not rise to the point of punitive damages by prefixing a quantifier like 'gross'." *Andor v. United Air Lines, Inc.*, 303 Or. 505, 515 (1987).

Additionally, it appears that the absence of a causal relationship prevents an award of punitive damages. It is not reasonable to assume that if Munsen had remedied all of the violations, such as by holding safety meetings or documenting its traffic safety plan, this accident would not have occurred. "A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003). There exists a lack of evidence to reasonably suggest a causal connection between the subject conduct and the harm experienced .

C. Deliberately avoiding health and safety inspections and evaluations.

Williamson argues that Munsen's failure to request outside assistance to ensure his compliance with OSHA and DOT regulations is evidence that it deliberately avoid safety inspections and evaluations. In support of this argument, Williamson relies on the existence of free professional

safety consulting services offered by both of Munsen's insurers, as well as safety seminars and publications available through trade groups and Munsen's failure to take advantage of these services

There is no evidence that Munsen, or other asphalt businesses, are obligated to take advantage of these opportunities or even how many businesses in the industry do so. All of the insurers testified that while they offer the services, insureds are not required to utilize them. Munsen did not seek additional help because, in good faith, it thought it was in compliance in 2008 and it had not been informed otherwise. Munsen based this decision on information derived by reading manuals and regulations, and informal insurance surveys and site visits. The decision not to seek additional input in the absence of any evidence that there was a requirement to seek such help or that Munsen was not in compliance and needed such help, is not evidence of wanton misconduct. Munsen did not "deliberately avoid" health and safety inspections, it merely opted not to utilize an offered, but not required, service it thought was unnecessary.

D. Providing false information to the AGC, SAIF, and JBL&K.

Williamson argues that evidence that Munsen was not forthright in answering questions posed by its insurers for the purpose of determining insurability and rates entitles him to punitive damages. Based on the evidence presented, Williamson has proved only that Munsen represented that it had a written traffic plan, kept written records of safety meetings, and maintained adequate employee personnel files and vehicle inspection files when Munsen later admitted to being deficient in these areas. As noted above, Munsen in good faith believed that it was complying with all applicable regulations and was not aware that written documentation of its safety procedures was required. Accordingly, any representation by Munsen in this regard would not be intentional or with malice. Additionally, there is no evidence that had Munsen correctly answered all of the questions,

the accident would not have occurred. The insurers likely would have required Munsen to comply with the documentation requirements without any changes to the underlying procedure and practices. Consequently, no reasonable factfinder could conclude that there was a causal relationship between Munsen's misrepresentations to its insurers and Williamson's accident.

## II. OSHA Claims

Munsen seeks dismissal of Williamson's negligence claims based on violations of OSHA regulations arguing that OSHA is intended to protect employees only, not customers. Williamson's only response to this motion was that because negligence has already been admitted, the motion is moot.

Under Oregon law, a plaintiff relying on a statute to support a negligence claim must show that: (1) defendant violated a statute; (2) plaintiff was injured as a result of that violation; (3) plaintiff was a member of the class of persons meant to be protected by the statute; and (4) the injury plaintiff suffered is of a type that the statute was enacted to prevent. *McAlpine v. Multnomah County*, 131 Or. App. 136, 144 (1994), *rev. den.,* 320 Or. 507 (1995). This court previously addressed Munsen's second motion to dismiss Williamson's claims under the Oregon Safe Employment Act (OSEA)[3] and determined that the provisions of O.A.R. 437-001-0760(1)(a)-(c), 29 C.F.R. § 1926.20(a)(1), and 29 C.F.R. § 1926.21(b)(2), apply only to employer/employee relationships. On the other hand, this court found that O.A.R. 437-002-225(9) imposes obligations on an owner of a vehicle and were, therefore, relevant to this action. Williamson filed a second

---

[3]The regulations relied on by Williamson appear to derive, at least to some degree, from both OSHA and OSEA.

amended complaint[4] eliminating the reference to the employer/employer regulations in his claim based on violation of OSEA but continued to rely on all of the regulations in his negligence claim. The question currently before the court is whether Williamson may rely on these regulations in support of his common law negligence claim.

Judge Stewart dismissed a negligence claim asserted by a nonemployee relying on a violation of OSHA, explaining that the "OSHA regulations in this case . . . were intended to protect employees from the risks in the workplace. Because the [plaintiffs] were not [defendant's] employees, they are not within the class of persons the regulations seek to protect." *Safeco Ins. Co. v. Olstedt Const. Inc.*, No. CV-02-1680-ST, 2004 WL 1050877, at *15 (D. Or. May 7, 2004). Judge Hubel reached the same result but for a different reason in *Wickham v. Appollo, Inc.*, No. 05-0352-HU, 2005 WL 175028, at *4 (D. Or. June 28, 2005), and held that a nonemployee could not rely on an OSHA regulation in support of a negligence claim because "the agency adopting the regulation had not been granted the authority to establish a course of action in favor of a person not within the purview of worker safety regulations" and that such a claim would be *ultra vires*. Judge Hubel did find that the conduct resulting in the violation could be used as relevant evidence to support the negligence claim. Under either theory, it appears that Williamson's negligence claims based on violations of O.A.R. 437-001-0760(1)(a)-(c), 29 C.F.R. § 1926.20(a)(1), and 29 C.F.R. § 1926.21(b)(2), which this court has previously held apply only to employer/employee relationships, should be dismissed.[5]

---

[4]Williamson subsequently filed a Third Amended Complaint eliminating his claim under the Employer's Liability Act, which referenced the same regulations, and added his claim for punitive damages.

[5]The court reserves ruling on Williamson's argument that he may offer evidence of various statutory and regulatory standards in defense of Munsen's affirmative defense of contributory negligence.

Conclusion

Munsen's motion (#67) for summary judgment should be GRANTED both on Williamson's claim for punitive damages and his negligence claim based on violations of O.A.R. 437-001-0760(1)(a)-(c), 29 C.F.R. § 1926.20(a)(1), and 29 C.F.R. § 1926.21(b)(2).

DATED this 21st day of October, 2010.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge